**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
JACKSON HEWITT INC.,

                Plaintiff,                          **REPORT & RECOMMENDATION**

    -against-                                08-CV-5237 (JG) (RER)

EXCELLENT PROFESSIONAL SERVICES
LLC, and ROSIVOUTHA DEJEAN,

                Defendants.
-------------------------------------------------------X
**RAMON E. REYES, JR., U.S.M.J.:**


## INTRODUCTION

       Jackson Hewitt Inc. ("Plaintiff") brought this action against Excellent Professional

Services LLC and Rosivoutha DeJean (collectively, "Defendants"), alleging that Defendants

violated the Lanham Act, 15 U.S.C. § 1114 *et seq.*, by making unauthorized use of Plaintiff's

marks[1] and breached two franchise agreements and a guaranty.  (Complaint ("Compl.") ¶¶ 46,

57–79, 94, 113, 120, 127, 131, 135.)  After Defendants continually failed to respond to this

Court's discovery orders, Plaintiff filed a motion for entry of default judgment and dismissal of

Defendants' counterclaims, seeking also damages and a permanent injunction.  (Docket Entry

No. 50, Mot. for Default J.)  On February 19, 2010, the Honorable John Gleeson referred the

matter to me in its entirety.  (Docket Entry dated 2/19/10.)

       For the reasons set forth below, I respectfully recommend that Plaintiff's motion for

default judgment be granted, but that its motion to dismiss Defendants' counterclaims be denied

---

[1] Plaintiff's attorney advised the Court on January 8, 2009 that Defendants had ceased using the Jackson Hewitt
Marks at their three former franchise locations.  (Docket Entry No. 8, Letter and Affidavit, at 1.)  Consequently,
Plaintiff no longer seeks statutory relief.

at this time, with an order directing Defendants to show cause why their counterclaims should not be dismissed for failure to state a claim on which relief can be granted. I further recommend that the Court award Plaintiff $131,513.35 on its contract claims (comprising $109,924.23 in outstanding contractual payments and $21,589.12 in prejudgment interest) and grant Plaintiff's application for a permanent injunction. Lastly, I recommend that Plaintiff's request for attorneys' fees and costs be denied at this time due to the inadequacy of Plaintiff's submissions.

## FACTS

Plaintiff provides computerized preparation of income tax returns through a nationwide network of franchised and company-owned offices. (Compl. ¶ 12.) Through its franchise system, Plaintiff provides franchisees the use of its proprietary computerized tax software for tax return preparation and the use of its Jackson Hewitt Marks. (Compl. ¶ 19.) On April 10, 2004, Plaintiff entered into two substantially identical franchise agreements with Flatbush Professional Services, LLC ("Flatbush") for a term of ten years in two geographical areas in New York State ("Territories"). (Compl., Pl.'s Exs. A and B ("Franchise Agreements") §2.1.) After two transfers, Flatbush's interest in the Franchise Agreements was ultimately transferred to defendant Excellent Professional Services LLC ("EPS") on January 16, 2007. (Compl., Pl.'s Ex. D (Addendum to Franchise Agreement) at 96.) Co-defendant DeJean was listed as the sole owner of EPS and its predecessors, including Flatbush. (Compl. ¶ 26.) In connection with the Franchise Agreements, DeJean also provided Plaintiff with a personal guaranty of EPS' financial obligations. (Docket Entry No. 1, Pl.'s Ex. E ("EPS Guaranty").)

Under the terms of the Franchise Agreements, Defendants received the exclusive right to operate their tax return preparation businesses and use Plaintiff's Jackson Hewitt Marks and tax preparation software. (Franchise Agreements, §1.) The agreements required that Defendants make periodic payments ("Franchise Fees") to Plaintiff equal to a percentage of Defendants' Gross Volume of Business. (*Id.* § 5.) Plaintiff retained the right to terminate the Franchise Agreements for good cause, including the underreporting of the Gross Volume of Business. (*Id.* §20.2.) Plaintiff also retained the right to audit and inspect, among other things, Defendants' business and financial records, bank statements, and computer records related to the franchise business. (*Id.* §16.1.)

When Plaintiff audited Defendants' records on October 9, 2008, it discovered that Defendants had underreported their Gross Volume of Business, resulting in underpayment to Plaintiff. (Compl. ¶ 46.) Consequently, Plaintiff notified Defendants on November 21, 2008 that it had terminated the Franchise Agreements and demanded that Defendants make full payment for past due Franchise Fees, remove all Jackson Hewitt signage from its businesses, and comply with all other post-termination obligations (Docket Entry No. 1, Pl.'s Ex. F (the "Termination Notice") at 101–02), including refraining from engaging in tax preparation services within EPS' former Territories. (Franchise Agreements, §18.) Plaintiff alleges that Defendants breached certain post-termination obligations by engaging in a competing tax business in EPS' former Territories, failing to return Plaintiff's confidential and proprietary materials, failing to notify the phone company and transfer Defendants' phone numbers to Plaintiff, continuing to use the Jackson Hewitt Marks, and failing to pay Franchise Fees owed to Plaintiff. (Compl. ¶¶ 57–81; Franchise Agreements §2.1.)

## PROCEDURAL HISTORY

Plaintiff filed this action on December 29, 2008, seeking a temporary restraining order (TRO), a preliminary injunction, damages, prejudgment interest, and attorneys' fees and costs. (Compl. ¶¶ 96, 109.) On December 31, 2008, Defendants failed to appear at the hearing at which Judge Gleeson granted Plaintiff's TRO application. (Docket Entry dated 12/31/2008, Minute Entry.) The TRO restrained Defendants from using Jackson Hewitt Marks and compelled them to comply with their post-termination obligations. (*Id.*) On January 15, 2009, Plaintiff filed a motion to hold Defendants in contempt for failing to comply with the TRO. (Docket Entry No. 11, Motion.) On January 22, 2009, Judge Gleeson issued the preliminary injunction against Defendants, but reserved a decision on Plaintiff's contempt motion to give Defendants an additional opportunity to turn over their computers and client files to Plaintiff by January 26, 2009. (Docket Entry dated 1/22/09, Minute Entry.) Defendants continued to violate the TRO and the preliminary injunction by failing to return all of Plaintiff's confidential materials. (Docket Entry No. 22, Pl.'s Status Report.)

Defendants did not file any response to Plaintiff's status report or appear for the hearing on the contempt motion. (Docket Entry No. 24 (Contempt Order) at 4.) On February 13, 2009, Judge Gleeson granted Plaintiff's motion for contempt. (*Id.*) Defendants were then ordered to pay $1,000 per day until they complied with the TRO and the preliminary injunction, as well as $10,845.45 in attorneys' fees. (*Id.* ¶¶ 16–19; Docket Entry dated 3/19/09, Order.)

Plaintiff submitted its proposed scheduling order and explained its numerous unsuccessful attempts to contact Defendants about a joint proposed scheduling order. (Docket

Entry No. 29, Pl.'s Letter.)  On April 6, 2009, Defendants filed their answer, affirmative

defenses, and counterclaims alleging misrepresentation of terms of the contract, fraudulent

concealment, unjust enrichment, and breach of contract.  (Docket Entry No. 33, Answer.)

Defendants failed to serve their initial disclosures, comply with the Contempt Order, or comply

with their discovery obligations.  (Docket Entry Nos. 39, Pl's letter dated 6/18/2009, and 40,

Pl.'s letter dated 7/27/2009.)  I directed Defendants to respond to Plaintiff's written discovery

and to serve initial disclosures by July 3, 2009.  (Docket Entry dated 6/19/09, Minute Entry.)  As

of July 27, 2009, Defendants still had yet to comply with the Court's discovery orders.  (Docket

Entry No. 40.)

On July 28, 2009, I ordered Defendants to respond in full to Plaintiff's discovery request

by August 14, 2009, waiving all non-privilege based objections.  (Docket Entry dated 7/28/09,

Minute Entry.)  I warned DeJean that Defendants' failure to respond would result in a $250

sanction.  (*Id.*)  I also warned DeJean's counsel that he would be subject to an additional $250

sanction if Defendants failed to respond.  (*Id.*)  Defendants failed to serve their initial disclosures

or respond in any way to Plaintiff's discovery requests by the deadline.  (Docket Entry No. 41.)

On August 27, 2009, I sanctioned DeJean because Defendants had not met the August 14,

2009 deadline to comply with all discovery obligations, and discussed with Plaintiff the

possibility of filing a motion for default judgment as a final resolution in this case.[2]  (Docket

Entry No. 43, 8/27/09 Conference Transcript.)  On February 12, 2010, after Defendants

continued to fail to comply with the Court's discovery orders, Plaintiffs filed the instant motion.

---

[2] Although defense counsel was also sanctioned $250 at the August 27, 2009 conference, I subsequently declined to sanction him.  (Docket Entry dated 12/23/09, Minute Entry.)

**DISCUSSION**

I.    **Default Judgment**

Plaintiff seeks default judgment pursuant to Rule 37, which provides in pertinent part:

> If a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders. They may include the following: . . . (vi) rendering a default judgment against the disobedient party . . . .

Fed. R. Civ. P. 37(b)(2)(A)(vi); *see also Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991) ("[a] district court has wide discretion in imposing sanctions . . . under Rule 37"). Courts will enter default judgment against parties who repeatedly violate discovery obligations. *See, e.g., Bambu Sales. Inc. v. Ozak Trading Inc.*, 58 F.3d 849 (2d Cir. 1995) (affirming default judgment against defendant who resisted discovery orders for five months and defendant's claim of illness was unsubstantiated); *United States Freight Co. v. Penn Cent. Transp. Co.*, 716 F.2d 954, 954–55 (2d Cir. 1983*)* (per curiam) (upholding sanction of default judgment where defendant failed to comply with discovery order despite having had proper notice). "[A]lthough entry of a default judgment is an extreme measure, discovery orders are meant to be followed." *Bambu Sales, Inc.*, 58 F.3d at 853. A party who flouts discovery orders does so at his own peril. *See Update Art*, 843 F.2d at 73; *accord Sony BMG Music Entm't v. Thurmond*, No. 06 CV 1230, 2009 U.S. Dist. LEXIS 110229, at *5 (E.D.N.Y. Sept. 16, 2009) ("[C]ourts should not shrink from imposing harsh sanctions where . . . they are clearly warranted.") (citing *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979)).

To determine whether a litigation-ending sanction is warranted, courts have considered

the following factors: (a) willfulness or bad faith on the part of the noncompliant party; (b) history of noncompliance; (c) effectiveness of lesser sanctions; (d) whether the non-compliant party had been warned about the possibility of sanctions; (e) client's complicity; and (f) prejudice to the moving party. *Am. Cash Card Corp. v. AT&T Corp.*, 184 F.R.D. 521, 524 (S.D.N.Y. Feb. 10, 1999) (citing Jodi Golinsky, Note, *The Second Circuit's Imposition of Litigation-Ending Sanctions for Failures to Comply with Discovery Orders*, 62 Brook. L. Rev. 585, 596–97 (1996)), *aff'd* 210 F.3d 354 (2d Cir. 2000); *accord Gutman v. Klein*, 03 CV 1570, 2008 U.S. Dist. LEXIS 92398, at *37 (E.D.N.Y. Oct. 15, 2008); *Lavely v. Redheads, Inc.*, 03 CV 7752, 2006 U.S. Dist. LEXIS 5217, at *7 (S.D.N.Y. Feb. 9, 2006). No one factor is dispositive; sanctions must be weighed in light of the full record of the case. *See Cine Forty-Second St. Theatre Corp*, 602 F.2d at 1068; *Fairfield Fin. Mortg. Group v. Luca*, 06 CV 5962, 2008 U.S. Dist. LEXIS 94159, at *18 (E.D.N.Y. Nov. 19, 2008); *see also Nita v. Connecticut Dep't of Envtl. Prot.*, 16 F.3d 482, 485 (2d Cir. 1994); *Wing Kwong Ho v. Target Constr. of N.Y., Corp.*, 08 CV 4750, 2010 U.S. Dist. LEXIS 54176, at *8 (E.D.N.Y. June 3, 2010). Federal courts strongly prefer to decide cases on the merits. *See, e.g., Enron Oil Corp.*, 10 F.3d at 96. However, the sanctions under Rule 37 must be available to the district court in appropriate cases to (1) ensure that a party does not benefit from its own failure to comply with discovery orders, (2) specifically deter and obtain a party's compliance with the order issued, and (3) serve as a general deterrent for other litigants, provided that the sanctioned party was in some sense at fault. *See Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988) (*citing Nat'l Hockey League v. Metropolitan Hockey Club, Inc*., 427 U.S. 639, 643 (1976) (per curiam)).

### A.   <u>Willfulness</u>

"Noncompliance with discovery orders will be deemed willful when the orders have been clear, when the party has understood them and when the party's non-compliance is not due to factors beyond the party's control." *Fairfield Fin. Mortg. Group*, 2008 U.S. Dist. LEXIS 94159, at *18 (internal quotation marks omitted).  In this case, Defendants have repeatedly failed to comply with the Court's orders, even after the Court clearly laid out Defendants' post-termination and discovery obligations.  This failure demonstrates a continual disregard for this Court's authority.  The Court found that Defendants "have not only failed to diligently accomplish what was ordered, but have stubbornly and willfully sought to evade their obligations under the [preliminary] injunction."  (Docket Entry No. 24, Contempt Order.)

I issued discovery orders during the subsequent discovery phase that clearly laid out Defendants' discovery obligations.  (Docket Entries dated 6/19/09 and 7/28/09.)  I specifically directed Defendants to respond to Plaintiff's written discovery and provide initial disclosures and stated at the July conference that there would be no further extensions to respond to Plaintiff's discovery requests.  (*Id*.)  I warned Defendants' counsel that failure to fully respond by August 14, 2009 would result in monetary sanctions against him and Defendants.  (Docket Entry dated 7/28/09.)  Defendants do not contest that they clearly understood their discovery obligations.

Defendants contend that they failed to respond to Plaintiff's written interrogatories because of DeJean's responsibilities caring for her then-ailing late father.  (Docket Entry No. 55.)  I granted an extension to respond to discovery requests at the July 28, 2009 conference in light of DeJean's family situation.  However, Defendants did not meet the extended August 14,

2009 deadline, nor did they request any additional extension of time to respond.

After failing to comply with these discovery orders, Defendants also failed to comply with the order directing them to respond to a letter Plaintiff filed on ECF. (Docket Entry dated 9/18/09, Order.) Plaintiff's letter discussed Defendant's continued failure to comply with discovery obligations and the Contempt Order, advised the Court of its unwillingness to extend the discovery period, and requested permission to file a motion for entry of default judgment. (Docket Entry No. 44.) Defendants' counsel claimed that he failed to reply to Plaintiff's letter because he was unaware that Plaintiff had filed the letter through the ECF system, having become accustomed to receiving court documents in hard copy. (Docket Entry No. 55 ¶ 21–22.) Counsel's negligence does not excuse failure to comply with the September 18, 2009 discovery order. *See* E.D.N.Y. Local R. 5.2 ("A paper served and filed by electronic means in accordance with procedures promulgated by the Court is, for purposes of Federal Rule of Civil Procedure 5, served and filed in compliance with the local civil rules of the Southern and Eastern Districts of New York."). Counsel should have understood his duty to comply with the Court's order to respond to documents filed online, which merits the same attention as those filed in hard copy. "Where gross professional negligence has been found—that is, where counsel clearly should have understood his duty to the court—the full range of sanctions may be marshaled." *Cine Forty-Second St.*, 602 F.2d at 1068. Parties are fully responsible for their counsel's actions and omissions, because a party in an action chooses her counsel at her peril. *See Link v. Wabash R. Co.*, 370 U.S. 626, 633–34 (1962). Such negligence is not due to factors beyond Defendants' or counsel's control and does not exempt Defendants from willfully ignoring the Court's discovery

orders. Accordingly, Defendants have acted willfully in failing to comply with the Court's discovery orders.

**B.      History of Noncompliance**

As discussed above, Defendants have a history of noncompliance in this case. To date, Defendants have failed to: (1) comply with the TRO, (2) comply with the preliminary injunction, (3) comply with the Contempt Order, (4) pay attorneys' fees pursuant to the Contempt Order, (5) serve their initial disclosures, (6) respond in any way to Plaintiff's interrogatories, (7) respond in full to Plaintiff's discovery requests pursuant to the June 19 and July 28, 2009 court orders, and (8) adequately communicate with their adversaries.

Defendants contend that they have meaningfully engaged in complying with the discovery requests and insist that they have furnished to Plaintiff all required documents and material. (Docket Entry No. 55, Def.'s Aff. ¶¶ 9–10.) Defendants' production amounted to fifty-two responsive pages, and Defendants responded in writing to 27% of Plaintiff's written requests. (Docket Entry No. 44, Pl.'s letter, at 2.) Because DeJean had operated EPS and its predecessors since April 10, 2004, Plaintiff expected a considerably larger production than it had received from Defendants. (*Id.*; Franchise Agreements.) DeJean was the sole owner of EPS and its two predecessors, giving her more than four years of experience providing tax services at her three former franchise locations. (Contempt Order ¶¶ 1–3.) The production was also unexpectedly small because the Franchise Agreements required Defendants to maintain records, including all tax returns and bank statements, for at least four years from the date the documents were created. (Franchise Agreements §15.3.) Finally, Defendants have still failed to serve

initial disclosures, respond to interrogatories, or provide complete written responses to Plaintiff's document requests. Defendants' non-compliance with the Court's orders is extensive and ongoing.

### C.     <u>Effectiveness of Lesser Sanctions</u>

Prior sanctions have not induced Defendants' compliance. The Contempt Order issued in response to Defendants' failure to comply with the TRO and the preliminary injunction, did not compel Defendants to comply with the Court's orders. Defendants have yet to comply with the Contempt Order, which required Defendants to pay $1,000.00 per day until they complied with the TRO and preliminary injunction. Furthermore, Defendants have yet to pay Plaintiff's attorneys' fees for services rendered in connection with the contempt motion pursuant to the Contempt Order.

After extending Defendants' deadline to respond to Plaintiff's discovery requests, I warned both DeJean and Defendants' counsel that failure to respond in full to Plaintiff's discovery requests by the extended August 14, 2009 deadline would result in a $250.00 sanction against DeJean and Defendants' counsel. (Docket Entry dated 7/28/09, Minute Entry.) Despite my warning, Defendants missed the deadline, provided deficient documents and incomplete written responses on August 27, 2009, and completely failed to provide initial disclosures or responses to interrogatories.

### D.     <u>Warning of Possibility of Default Judgment</u>

Defendants were warned of the possibility of sanctions. At the August 27, 2009

conference, I discussed with Plaintiff's counsel the possibility of default judgment in light of Defendants' persistent non-compliance. (Docket Entry No. 42) As Defendants were late to the conference, I directed them to obtain a copy of the recorded discussion, giving them notice of the possible litigation-ending sanctions that their past actions might warrant. (*Id.*) Despite such notice, Defendants continue to violate discovery orders. Defendants have been on notice, since the August 27, 2009 conference, that their history of non-compliance justifies holding them in default and entering a default judgment against them.

### E.      Client's Complicity

DeJean was herself responsible, at least in part, for Defendants' failings during discovery. *See Am. Cash Card Corp.*, 184 F.R.D. at 525 (finding plaintiff company's principals complicit in plaintiff's failures to comply with discovery where the principals participated in the discovery process and attended several of the pretrial conferences), *aff'd* 210 F.3d 354. DeJean, the sole owner of EPS, was involved with the discovery process and attended several of the pretrial conferences, including the conference held on August 27, 2009 concerning Defendants' compliance with discovery obligations. (Docket Entry No. 42 at 11.) DeJean understood her duties to follow the Court's orders. Accordingly, her actions show she was complicit in Defendants' failure to comply.

### F.      Prejudice to Plaintiff

Lastly, Plaintiff has been prejudiced by Defendants' noncompliance with the Court's discovery orders. *See Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982)

("Prejudice from unreasonable delay may be presumed as a matter of law . . . ."); *Wing Kwong Ho*, 2010 U.S. Dist. LEXIS 54176, at *9 (finding prejudice when plaintiff had to expend resources to compel defendants to comply with pretrial obligations and court orders). Here, Plaintiff has had to devote extensive time and resources to obtain the most basic discovery, and the case has been significantly delayed. This Court has already recognized Plaintiff's undue expenses by awarding Plaintiff attorneys' fees for work on the Contempt Order. (Docket Entry dated 3/19/2009, Order.) Defendants' ongoing non-compliance would continue to prejudice Plaintiff by requiring Plaintiff to expend additional time and resources.

For the reasons stated above, and in light of Defendants' continued failure to comply with the Court's orders, extreme measures are called for in this case. I therefore respectfully recommend that Plaintiff's motion for entry of default judgment be granted.

## II.    Dismissal of Counterclaims With Prejudice

In addition to authorizing courts to enter default judgments against noncompliant parties, Rule 37 also allows courts to dismiss non-compliant parties' claims "if a party . . . fails to obey an order to provide or permit discovery . . . ." Fed. R. Civ. P. 37(b)(2)(A)(v). Like entering default judgment, dismissing claims pursuant to Rule 37 is appropriate "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a sanction." *Nat'l Hockey League*, 427 U.S. at 643.

Dismissal with prejudice pursuant to Rule 37(b)(2) is a remedy to be used only in extreme situations where a party fails to comply with a pretrial court order because of

"willfulness, bad faith, or any fault." *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990) (quoting *Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986)). The Court must "ensure that the disobedient party had notice that its conduct risked dismissal and had an opportunity to be heard" before deciding to dismiss a claim with prejudice pursuant to Rule 37. *Masi v. Steely*, 242 F.R.D. 278, 284 (S.D.N.Y. June 12, 2007); *see also Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298 (2d Cir. 2009) (upholding dismissal under Rule 37 because health problems did not excuse plaintiff's failure to comply with discovery orders when court had warned Plaintiff of sanctions); *Madison Stock Transfer, Inc. v. Netco Invs., Inc.*, 06 CV 3926, 2008 U.S. Dist. LEXIS 108856, at *7–8 (E.D.N.Y. Dec. 18, 2008) (dismissing defendant's counterclaim under Rule 37 for repeated failure to comply with discovery orders when the court had warned defendant that further non-compliance would justify dismissal).

Like in deciding whether to enter default judgment, several similar factors are useful in evaluating whether dismissal under Rule 37 is warranted. These include: (a) the duration of noncompliance, (b) whether the non-compliant party had been warned of the consequences of noncompliance, (c) the willfulness of the non-compliant party or the reason for noncompliance, and (d) the efficacy of lesser sanctions. *Agiwal*, 555 F.3d at 302–03. The latter two factors—willfulness and efficacy of lesser sanctions—are substantially identical to two of the factors discussed in Sections I(A) and (C) above. Defendants' failure to comply with discovery orders has been willful and lesser sanctions have been ineffective. I will thus discuss the first two factors below.

### A. Duration of Noncompliance

Failure to comply with court orders for an extended period of time may warrant court

sanctions.  *See, e.g.*, *Agiwal*, 555 F.3d 298 (upholding dismissal with prejudice, pursuant to Rule

37 for Plaintiff's failure to comply with discovery orders for six months); *see also Bambu Sales*

*Inc.*, 58 F.3d at 853 (upholding entry of default judgment against defendants who ignored

discovery order for five months).  In this case, the period of non-compliance with discovery

orders spanned approximately nine months from the date of my scheduling order (May 12, 2009)

to the time the Plaintiff filed its motion (February 12, 2010).  However, Defendants' general

non-compliance with this Court's orders began at least as early as February 13, 2009, when

Judge Gleeson issued the Contempt Order against Defendants for failure to comply with the

TRO and the preliminary injunction.  (Docket Entry No. 24.)  Defendants' noncompliance with

court orders has spanned well over a year and has inexcusably delayed resolution of this action.

###    B.    <u>Warning of Possibility of Dismissal of Counterclaims</u>

"The severe sanction of dismissal with prejudice may be imposed . . . so long as warning

has been given that non-compliance can result in dismissal."  *Valentine v. Museum of Modern*

*Art*, 29 F.3d 47, 49 (2d Cir. 1994).  As discussed in Section I(D) above, Defendants had notice

that their continued non-compliance with court orders would result in entry of default judgment

against them, which is also a litigation-ending sanction.  However, because the Court has not

explicitly warned Defendants that their non-compliance would result in dismissal of their

counterclaims, I recommend that the Court deny Plaintiff's motion under Rule 37 to dismiss

counterclaims.

However, the Court has the power, pursuant to Rule 12(b)(6) to *sua sponte* dismiss

Defendants' counterclaim for failure to state a claim on which relief may be granted.  Fed. R.

Civ. P. 12(b)(6)*; see also Watts v. Jackson Hewitt Tax Service Inc.*, 675 F. Supp. 2d 274, 280

(E.D.N.Y. Nov. 13, 2009) (dismissing counterclaim under 12(b)(6)); *Shelly v. Brandveen*, 06 CV 1289, 2006 WL 898071, *4 (E.D.N.Y. Apr. 3, 2006) ("If a complaint fails to comply with these rules, the court may, on motion or *sua sponte*, dismiss the complaint.") (citing *Kittay v. Kornstein*, 230 F.3d 531, 542 (2d Cir. 2000)).  To survive dismissal, a claimant must plead factual content that allows the court to reasonably infer that the respondent is liable for the alleged misconduct.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . [n]or does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.").  Nevertheless, courts should not dismiss claims pursuant to Rule 12(b)(6) without giving the party bringing suit an opportunity to be heard.  *See Perez v. Ortiz*, 849 F.2d 793, 798 (2d Cir. 1988) (holding that the district court erred in dismissing claims *sua sponte* without giving plaintiffs notice and an opportunity to be heard); *Lewis v. New York*, 547 F.2d 4, 5–6 & n.4 (2d Cir. 1976) ("Failure to afford an opportunity to address the court's *sua sponte* motion to dismiss, is by itself, grounds for reversal"), *aff'd*, 476 U.S. 409, 106 S. Ct. 1992 (1986).  Rule 12(b)(6) applies to counterclaims and claims with equal force.  *See, e.g.,Cohen v. Stephen Wise Free Synagogue*, 95 CV 1659, 1996 U.S. Dist. LEXIS 4240, at *4 (S.D.N.Y. Apr. 4, 1996) (applying the same 12(b)(6) standard to claims and counterclaims).

Defendants' counterclaims do not allege any specific facts, but consist merely of conclusory statements.  For example, they do not include any information about what Plaintiff actually did to "misrepresent . . . the terms of the alleged contract," or which acts of Plaintiff constituted "fraudulent concealment."  (Answer, ¶¶ 6–7.)  The Court cannot draw any reasonable inferences from these conclusory statements.  Moreover, Defendants have not served Plaintiff

with discovery requests or done anything else to further the litigation of their counterclaims. I therefore recommend that Defendants be ordered to show cause why their counterclaims should not be dismissed for failure to state a claim pursuant to Rule 12(b)(6), but reiterate my recommendation to deny Plaintiff's motion to dismiss counterclaims at this time.

## III.    Relief

After Plaintiff terminated the Franchise Agreements, Defendants were obligated to comply with a number of post-termination obligations, including paying all amounts due under the Agreements; returning to Plaintiff all originals and copies of trade secrets, confidential information, and client files; deleting all confidential materials and client files from their computers; complying with the contractual covenant not to compete, and returning all leased equipment and materials bearing the Jackson Hewitt Marks to Plaintiff. (Franchise Agreements §20.3(a)–(j).) Because Defendants have not adequately complied with these post-termination obligations, Plaintiff seeks outstanding Franchise Fees, prejudgment interest, attorneys' fees and costs, and a permanent injunction requiring Defendants to comply with the post-termination obligations set forth in the Franchise Agreements.

### A.    Liability Under New Jersey Law

A federal court must apply the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496–97 (1941). "New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or a violation of public policy, a court is to apply the law selected in the contract as long as the state selected has

sufficient contacts with the transaction." *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000); *see Woodling v. Garrett Corp.*, 813 F.2d 543, 551–552 (2d Cir. 1987) (applying parties' contractual choice-of-law provision to substantive matters when one party's principal place of business is in that state). In this case, the Franchise Agreements contain a choice-of-law provision selecting New Jersey law.[3] New Jersey has sufficient contacts with this transaction because Plaintiff's principal place of business is located in Parsippany, New Jersey. (Compl. ¶ 1.) The exceptions to applying the law selected in the contract do not apply as defendants have not substantiated their allegations that Plaintiff committed "acts . . . constitut[ing] fraudulent concealment." (Answer ¶¶ 33–51.) The counterclaims consist of mere conclusory statements. Furthermore, Defendants have not specifically alleged any fraud or wrongdoing as to the choice-of-law provision contained in the Franchise Agreements. Finally, the laws of New Jersey and New York relevant to this recommendation are substantially identical. I therefore honor the law chosen by the parties and analyze Plaintiff's damage claims under the general contract law principles of New Jersey.

Plaintiff's breach of contract claims require proof of (1) a contract between the parties, (2) defendant's breach of that contract, (3) damages suffered by the plaintiff, and (4) plaintiff's performance. *See, e.g., Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (New Jersey law); *Hanson Eng'g, Inc. v. Ascher*, 07 CV 2651, 2008 U.S. Dist. LEXIS 32089, at *2 (D.N.J. Apr. 16, 2008). Plaintiff has adequately pleaded each of these elements against Defendants. There is no dispute as to whether a contract between the partes exist.[4] Defendants breached the

---

[3] "In any action, suit, or claim . . . by or against us . . . which in any way arises out of or relates to your franchise relation with us . . . only New Jersey law . . . shall apply to all claims asserted . . . ." (Franchise Agreements § 28.1, Governing Law.)

[4] Defendants' allegations that Plaintiff deceptively induced them into entering a contract are unsubstantiated. (Answer ¶¶ 34, 41–42.)

Franchise Agreements by underreporting their Gross Volume of Business and failing to make payments. (Compl. ¶ 46; Franchise Agreements §5.) Defendants' failure to accurately report its Gross Volume of Business and their failure to pay accurate Franchise Fees damaged Plaintiff. (Compl. ¶ 46.) Plaintiff has fully performed its obligations under the agreements. (Compl. ¶ 27.) As a consequence of their default, Defendants are deemed to have admitted all of Plaintiff's well-pleaded allegations in the complaint. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Mktg. Dev. Ltd*, 2009 U.S. Dist. LEXIS 118313 at *7.

Plaintiff has also sufficiently pleaded its breach-of-contract claim against DeJean. In signing the EPS Guaranty, DeJean agreed to take on personal liability for EPS' obligations, including all of EPS' post-termination obligations and all the covenants contained in the Franchise Agreements, including the covenant not to compete. (Compl. ¶ 35, Ex. E.) I therefore recommend that the Court find DeJean and EPS jointly and severally liable for Plaintiff's breach of contract claims. *See Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 284 (E.D.N.Y. Aug. 25, 2009) (applying New Jersey law and recommending judgment jointly and severally against both defendants where franchise owner signed a personal guaranty for the financial obligations of the franchise), *report and recommendation adopted by* 666 F. Supp. 2d 274 (E.D.N.Y. Sept. 18, 2009).

## B. <u>Outstanding Franchise Fees</u>

Although the defaulting party is deemed to have admitted every well-pleaded allegation, a party's default is not considered an admission of damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp.*, 973 F. 2d 155, 158 (2d Cir. 1992). Damages "must be established by

the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." *Id.* at 158; *cf. S. Katzman Produce, Inc. v. Won*, 08 CV 2403, 2009 U.S. Dist. LEXIS 69465, at *6 (E.D.N.Y. Aug. 7, 2009) (permitting review of detailed affidavits and documentary evidence instead of a hearing) (quotations omitted); *Bio Hi-Tech Co., Ltd v. Comax, Inc.*, 07 CV 2260, 2009 U.S. Dist. LEXIS 101768, at *13 (E.D.N.Y. July 27, 2009) (recommending relief without an evidentiary hearing, where plaintiff filed detailed affidavits and exhibits about the potential injuries and defendants failed to respond), *report and recommendation adopted by* 07 CV 2260, 2009 U.S. Dist. LEXIS 101761 (E.D.N.Y. Oct. 27, 2009). The Court makes this recommendation upon a review of Plaintiff's complaint, the Franchise Agreements, and the affidavit by Plaintiff's Vice President of Franchise Sales and Compliance, Arnold Janofsky. (Docket Entry No. 50, Janofsky Affidavit ("Janofsky Aff.").) Defendants do not dispute the damages sought.

The goal of damages is to "put the injured party in as good a position as . . . if performance had been rendered." *Donovan v. Bachstadt*, 91 N.J. 434, 444 (N.J. 1982). Notwithstanding Defendants' default, Plaintiff must prove its damages to a "reasonable certainty." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997); *see also Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1176 (3d Cir. 1993) (New Jersey); *Material Techs. v. Carpenter Tech. Corp.*, 01 CV 2965, 2004 U.S. Dist. LEXIS 28892, at *90 (D.N.J. Dec. 14, 2004). Here, Plaintiff seeks $109,924.23 in compensatory damages, representing the amount owed by Defendants in advertising and royalty fees. (Mot. at 11–12.) Plaintiff has submitted the following supporting documentation: copies of the Franchise Agreements, Personal Guarantee, and Termination Notice (Compl., Exs. A–F), and the Affidavit

20

of Arnold Janofsky.  The Franchise Agreements required Defendants to pay Plaintiff Franchise Fees, which included a royalty fee of fifteen percent and an advertising fee of six percent, a total of twenty-one percent on its Gross Volume of Business.  (Janofksy Aff. ¶¶ 8–9; Franchise Agreements §5–6.)  Plaintiff has calculated the unpaid amounts that Defendants owe based on a one-day audit held on October 9, 2008, which revealed that defendant EPS provided abnormally large refunds as compared to other franchisees.  (Janofsky Aff. ¶ 4.)  DeJean did not provide any documentation of EPS' alleged refunds, stating instead that refunds had been paid in cash, that there were no receipts of the alleged transactions, and that refunds were dispersed from her personal account, to which she refused Plaintiff access.  (*Id.* ¶ 7.)  Plaintiff totaled the unsubstantiated refunds from 2005 through 2008, which amounted to $523,448.70.  Applying a combined Franchise Fees rate of twenty-one percent to the principal $523,448.70 amounts to a sum of $109,924.23 in outstanding fees.  (*Id.* ¶ 9.)  I respectfully recommend that Plaintiffs be awarded $109,924.23 in outstanding fees.


### C.    Prejudgment Interest

"Under New York choice of law principles, the allowance of prejudgment interest is controlled by the law of the state whose law determined liability on the main claim." *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 147 (2d Cir. 2008).  Under New Jersey law, prejudgment interest should be determined by the relevant provisions in the Franchise Agreements.  *See Mid-Jersey Nat'l Bank v. Fidelity-Mortgage Investors*, 518 F.2d 640, 645 (3d Cir. 1975) (applying New Jersey law and applying the prejudgment interest fixed by parties in the contract); *see also Utica Mut. Ins. Co. v. DiDonato*, 187 N.J. Super. 30, 43 (App. Div. 1982).

Here, Plaintiff seeks interest from the date of the termination of the agreements, November 21, 2008, through the filing date of the present motion, February 12, 2010, totaling $24,281.60 in prejudgment interest on the outstanding fees. (Mot. for Default J. at 13.) This spans a period of 448 days. However, Plaintiffs incorrectly calculated prejudgment interest at eighteen percent (18%) per year. (Janofsky Aff. ¶ 10.) The Franchise Agreements entitle Plaintiff to receive interest on past due payments at a rate of "eighteen percent (18%) per year or the highest legal rate of interest permitted by law, whichever is less . . . ." (Franchise Agreements, § 8.4). The maximum interest rate permitted under New Jersey law is 16% per annum. N.J. Stat. Ann., § 31:1-1(a). As such, the Court should calculate prejudgment interest at the rate of sixteen percent (16%) per year. Applying an annual interest rate of sixteen percent (16%) to a corpus of $109,924.23 for a period of 448 days produces a total interest amount of $21,589.12 (at $48.19 per diem)[5]. I respectfully recommend that the court award Plaintiff $21,589.12 in prejudgment interest.


**D.**     **Attorneys' Fees and Costs**

Plaintiff seeks attorneys' fees and court costs pursuant to section 28.18 of the Franchise Agreements.[6] "[U]nder New York choice of law principles, contractual choice of law clauses only apply to substantive issues; New York follows its own procedural rules." *See RLS Assocs. LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 214 (S.D.N.Y. Nov. 27, 2006). Under New York law, "the availability of attorney's fees should be considered [a] procedural [matter]."

---

[5] Applying a sixteen percent (16%) interest rate to the $109,924.23 in outstanding Franchise Fees yields $17,587.88. Dividing this amount by a year (365 days) amounts to interest of $48.19 per day. Multiplying $48.19 over the period of 448 days for which Plaintiff seeks interest amounts to a total of $21,589.12 in prejudgment interest.

[6] Section 28.18 reads: "The non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees and court costs, incurred by the prevailing party."

*Bensen v. Am. Ultramar*, 92 CV 4420, 1997 U.S. Dist. LEXIS 8196, at *45 (S.D.N.Y. June 11, 1997).  Therefore, I will analyze attorneys' fees under New York law.  The party requesting attorneys' fees must show that the requested rates "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895–96 (1984).  To assess attorneys' fee applications, courts must decide what the "presumptive reasonable fee" is for work performed in the case.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008).  To decide whether the application for attorneys' fee is reasonable, courts require attorneys to submit "contemporaneous time records specifying, for each attorney, the date, the hours expended, and the nature of the work done."  *Trs. of the Local 807 Labor-Mgmt. Health Fund v. M&M Bldg. Prods.*, 08 CV 4180, 2010 U.S. Dist. LEXIS 31467, *6 (E.D.N.Y. Mar. 17, 2010), *report and recommendation adopted by* 08 CV 4180, 2010 U.S. Dist. LEXIS 31461 (E.D.N.Y. Mar. 31, 2010).  Here, Plaintiff has not submitted any information pertaining to the hours spent, qualification of its attorneys, or other relevant evidence that would allow the Court to assess the reasonableness of its request.  Accordingly, I reserve recommending attorneys' fees and costs until Plaintiff provides the Court with the appropriate information and calculations.


### E.      Permanent Injunction

Lastly, Plaintiff seeks a permanent injunction incorporating the preliminary injunction provisions that require Defendants to comply with all post-termination obligations.  (Mot. for

Default J. at 13–14.)  Under the proposed permanent injunction, Defendants must (1) return to Plaintiff all trade secrets and confidential and proprietary materials, and (2) comply with their post-termination covenant not to compete.  (*Id*. at 14.)  A permanent injunction is warranted where (1) a party has succeeded on the merits, and (2) an injunction is necessary to prevent irreparable harm.  *See, e.g., L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co., Inc.*, 79 F.3d 258, 261–62 (2d Cir. 1996); *Lyons P'ship, L.P. v. D&L Amusement & Entm't*, 07 CV 3322, 2010 U.S. Dist. LEXIS 28571, at *30–31 (E.D.N.Y. Mar. 2, 2010), *report and recommendation adopted by* 07 CV 3322, 2010 U.S. Dist. LEXIS 28605 (E.D.N.Y., Mar. 25, 2010).

### 1)  Likelihood of Success on the Merits

As stated above, the Court deems a defaulting party to have admitted all well-pleaded allegations in the complaint pertaining to its liability.  *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158.  The allegations in the complaint, the Contempt Order, and the affidavits submitted in support of Plaintiff's motion for default judgment, provide a sufficient basis to find that Defendants failed to fully comply with their post-termination obligations, including the covenant not to compete.  Accordingly, Plaintiff has demonstrated actual success on the merits.

### 2)  Irreparable Harm

To show irreparable harm, Plaintiff must show that the alleged injury is likely and imminent, not remote or speculative.  *See Reuters Ltd. v. United Press Int'l.*, 903 F.2d 904, 907 (2d Cir. 1990); *Gill v. World Inspection Network Int'l, Inc.*, No 06 CV 3187, 2006 U.S. Dist. LEXIS 52426, at *6 (E.D.N.Y. July 31, 2006) (requiring a showing that irreparable damages are

likely, not merely possible) (quotations omitted). Assertions of irreparable harm must be

supported by facts. *See Summit Props. Int'l, LLC v. LPGA*, 07 CV 10407, 2010 U.S. Dist.

LEXIS 58444 (S.D.N.Y. June 14, 2010) (dismissing permanent injunction claim where

plaintiff's assertion of injury lacked factual evidence). Moreover, Plaintiff must show that its

injury cannot be fully remedied by damages. *Bio Hi-Tech*, 2009 U.S. Dist. LEXIS 101768, at

*18 (citing *Borey v. Nat'l Union Fire Ins. Col.*, 934 F.2d 30, 34 (2d Cir. 1991)).

Plaintiff contends that a "likelihood of irreparable harm remains" because Defendants

have failed to comply with the preliminary injunction. (Mot. for Default J. at 18.) Although

Plaintiff provides limited factual evidence in the instant motion to support this allegation, it is

clear to the Court that the likelihood of irreparable harm remains. The Court previously issued a

preliminary injunction against Defendants in January 2009. That injunction, which was

precipitated in part by Defendants' contemptuous conduct, required Defendants to: (1) refrain

from using Jackson Hewitt Marks to promote or offer tax return preparation services; (2) provide

Plaintiff all originals and copies of client files and client information; (3) return to Plaintiff

originals and copies of trade secret and other confidential information, whether stored on paper

or a computer; (4) disassociate Defendants' businesses with Plaintiff's franchises; (5) notify the

telephone company, advertising agencies and directories that Defendants no longer have the

right to use any of its franchise telephone numbers; (6) transfer all franchise telephone numbers

and listings to Plaintiff or its designee; and (7) refrain from operating a competing tax

preparation business within the Territories. (Docket No. 12, Prelim. Inj.) To date, some of these

orders remain to be followed.[7] Defendants have had multiple opportunities to comply with their

---

[7] Plaintiff alleges that Defendants have failed to: (1) return all of Plaintiff's trade secrets and confidential
information; (2) comply with the covenant not to compete; or (3) return to Plaintiff all client files and computers.
(Janofsky Aff. ¶¶ 12–13.)

obligations. Their continuous and willful non-compliance with their contractual obligations and the Court's orders poses an imminent likelihood of irreparable harm to Plaintiffs. *See, e.g., U.S. v. Pugh*, 07 CV 2456, 2010 WL 2266069, at *17 (E.D.N.Y. June 1, 2010) ("[Defendant's] violation of this court's preliminary injunction further underscores the need for a permanent injunction barring him from acting as tax return preparer. . . if [Defendant] continues to act as a tax return preparer, he will have the opportunity to commit future violations."); *City of New York v. Golden Feather Smoke Shop, Inc.*, 08 CV 3966, 2009 WL 2612345, at *41 (E.D.N.Y., Aug. 25, 2009) (quoting *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1100 (2d Cir. 1972)) ("The critical question for a district court in deciding whether to issue a permanent injunction in view of past violations is whether there is a reasonable likelihood that the wrong will be repeated."). As such, I respectfully recommend that Plaintiff's request for permanent injunction be granted.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiff's motion for default judgment be granted, but its motion to dismiss Defendants' counterclaims be denied. To that end, I recommend that the Court order Defendants to show cause why Defendants' counterclaims should not be dismissed for failure to state a claim on which relief can be granted.

I also recommend that Plaintiff be awarded $109,924.23 in outstanding Franchise Fees and $21,589.12 in prejudgment interest, for a total of $131,513.35, and that its request for a permanent injunction be granted. Finally, I recommend that Plaintiff's requests for attorneys' fees be denied at this time in light of insufficiency of evidence. Plaintiff is ordered to submit

documentation specifying the amount sought in attorneys' fees, explaining the rates charged, and detailing the time spend on this matter.  The record should be so supplemented by August 23, 2010.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court and the Honorable John Gleeson within fourteen days of receipt hereof—August 23, 2010. Failure to file timely objections may waive the right to appeal the District Court's Order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).  Plaintiff is directed to serve copies of this Report and Recommendation upon Defendants and promptly file proof of service with the Clerk of Court.

**Dated: August 6, 2010**
**Brooklyn, New York**

Ramon E. Reyes, Jr.

**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**